J. M. HOWIE v. ROBERT R. REA.

In an action to recover the stipulated price of certain castings, the defendant can show that the castings were not such as he contracted for, and were not suited to the purposes for which they were designed; and the jury, in their verdict, can allow the defendant the difference of value between the castings delivered and those contracted for.

In such case the defendant, by receiving the castings, so that he cannot return them, does not abandon his right either to sue for a breach of contract, or to insist, in his defence, on a reduction of the price agreed to be paid.

(*Thomas* v. *Francis*, 12 Ired. 282, cited and approved.)

Civil action, upon an alleged contract, tried before *Moore*, *J.*, at the Special (July) Term, 1873, of the Superior Court of Mecklenburg county.

The plaintiff, for himself, testified that he agreed to make for defendant, of cast iron, a large twelve-feet driving wheel and arms to support it, and also a three-feet pinion to work into the teeth of the driving wheel and be driven by it, and other appendages not necessary here to mention—the whole to be used in the construction of a flouring mill. Plaintiff also stated that he was to be paid at the rates of $5\frac{1}{2}$ cents per pound for the same. That he made the arms and segments of the driving wheel and delivered them to the defendant; but that in delivering the castings to the wagons that called for them, a mistake was made in the delivery of the proper pinion, and one was delivered that was not suited to or intended to be used or connected with the large wheel. That he had never delivered the proper pinion, though when informed by the defendant that the machinery would not work, and that that part of it had been broken in trying it, he offered to send the right pinion in his own wagon; to which proposition the defendant returned no answer.

Defendant testified that in the month of June he contracted with the plaintiff for the kind of castings stated by him, but with the express understanding that he was to pay for the same $250, and no more; that within a month or so after making this contract, the defendant sold his real estate and mill site, for which the machinery was intended, to a Powder Mill Company, which agreed to receive the arms and wheels contracted for by the defendant. That he, the defendant, lived near the place, and when the machinery was received several months afterwards and put up, it would not operate, and on the trial several parts of it was broken, and it was thrown aside as useless. Afterwards the Powder Mill Company put up a wooden circular rim, and to it bolted the cast iron segments, and getting a new pinion, worked with it. Defendant further stated, that the Powder Mill Company received the machinery, and never made any claim upon him for its deficiencies, and had paid him for it when at the time of the purchase, the Company paid for the mill site and land. Defendant had never offered to return

the machinery, nor asked the plaintiff to take it back, or exchange it.

The mill-wright engaged upon the work, stated that he had accompanied the defendant when he contracted with the plaintiff, and specifically described the kind and size of wheels and other parts wanted, and that plaintiff agreed to make the same for $250. That after the defendant sold the property, he continued to work at the same mill for the Powder Mill Company; that he received the castings and arms and pinions, and proceeded to put them up, and on trial found that they had not been made in a suitable and workmanlike manner, adapted to the end for which they were made. That upon trial, not gearing together properly, and from the segments having sprung, or being in a twist, several parts were broken apart and thrown aside, and wooden gearing substituted in their place.

Amongst other things, at the request of the plaintiff's counsel, the Court charged the jury that although the castings had been made in an unworkmanlike manner, and were not adapted to the purposes designed, yet if the defendant sold them and received pay for them before any part had been delivered, and the Powder Mill Company received the castings and made no complaint to the plaintiff or the defendant on account of the defects, then the plaintiff should recover the amount contracted to be paid therefor. To this defendant excepted.

The jury returned a verdict for the plaintiff. Rule for a new trial, granted and discharged. Judgment and appeal by the defendant.

*Guion* and *Jones & Johnston*, for appellant.
*Vance & Dowd*, contra.

BYNUM, J. 1. Formerly it was the practice when an action was brought for an agreed price of work which was to be performed according to contract, to allow the plaintiff to recover the stipulated sum, leaving the defendant to his cross action for breach of the contract; because the law construed the contract

as not importing that the performance of every portion of the work should be a condition precedent to the payment of the stipulated price, otherwise the least deviation would deprive the plaintiff of the whole price, and therefore the defendant was obliged to pay the price and recover for any breach of contract on the other side. Such seems to have been his Honor's view in this case, for in effect he charged the jury that the de fendant, having by his acts accepted the work without complaint, was obliged to pay the contract price, although it was done in an unworkmanlike manner.

2. But after the case of *Barton* v. *Butler*, 9 East. 479, a new departure in the practice began, and being attended with great convenience, has since been generally followed. The defendant was permitted to show that the work, in consequence of the non performance of the contract, was diminished in value, and the rule was established that it was competent for the defendant not to set off by a procedure, in the nature of a cross action, the amount of damages which he had sustained by a breach of the contract, but simply to defend himself by showing how much less the subject matter of the action was worth by reason of the breach of the contract, and to the extent that he obtained an abatement of the price he was considered as having received satisfaction for the breach of contract, and to that extent, but no more, he was precluded from recovery in another action. So it became established, 1st, that the buyer might set up the objective quality of the work in diminution of the price ; and 2d, that he might bring a cross action if he desired to claim special or consequential damages, which latter action was not barred by reason of his having obtained a diminution of the price in a previous action brought by the vendor.

3. The third and last improvement in pleading and practice, is that introduced by C. C. P., secs. 100 and 101, wherein the defendant may not only set up the defence of a defect in the quality of his purchase and reduce the judgment by the amount of the difference in value of the article as contracted for and

as received, but he also has the benefit of the cross action, and can, by counter claim, obtain affirmative relief to the extent of any special or consequential damage sustained.

Numerous cases establish the foregoing propositions. In *Poulton* v. *Lattimore*, 9 B. & C. 239, the buyer's defence in an action for the price was successful for the whole amount of the price. The vendor sued to recover the price of seed, warranted to be good growing seed, which the purchaser had sold to two other persons, who proved that the seed was worthless, and that they neither had paid or would pay for it. And it. was further held in the same case, that the buyer might insist on his defence without returning or offering to return the seed,. and might even sustain a direct action for damages against the vendor without previous notice. In *Mondell* v. *Steel*, M. & W. 858, a leading case, it is held that although the buyer, by his acceptance of the article, has the title indefeasibly vested in him so that he cannot return it, yet that does not constitute an abandonment of his remedy by cross action, or his right to insist in defence on the reduction of the price. And in *Dengle* v. *Hare*, 7 C. & B. (N. S.) 145, the Court went farther and held that the jury had properly allowed the purchaser the difference of value between the article delivered and the article as warranted ; and in *Jones* v. *Just*, 3 Q. B. 197, the buyer recovered as damages £750, although by reason of a rise in the market he sold the inferior article for about as much as he originally gave for it. In *Randall* v. *Raper*, 27 Q. B. 266, it was held that the buyer could recover all the damages he would be liable for to his sub-vendees, although the plaintiff had not paid the claims of the sub-vendees, because the buyer was *liable* over, and therefore these damages were the necessary consequence of the breach of contract by the original. vendor.

In our case the defendant, by his conduct, accepted the machinery and made it his own, and he is liable for the value of the work as done and delivered. The rule for ascertaining the amount due, is " if the work contracted for is not worth the sum

agreed, what is it worth as done?" *Farmer* v. *Francis*, 12 Ired. 282; Benjamin on Sales, 572-3.

As the plaintiff appears to be entitled to recover something under our liberal system of pleading, we cannot allow the motion to dismiss because of the variance between the allegation and proof, but suggest that the plaintiff amend his complaint so as to conform to his proof.

Per Curiam.                              *Venire de novo.*