### DURHAM LUMBER COMPANY, INC. v. WRENN-WILSON CONSTRUCTION COMPANY.

(Filed 18 March, 1959.)

**1. Contracts § 29—**

In an action to recover the unpaid portion of the contract price for materials furnished, the defendant, under his denial of plaintiff's alleged performance, may show, in diminution of plaintiff's recovery, the reasonable cost of supplying omissions, if any, and of remedying defects, if any; and, if such costs exceed the unpaid portion of the contract price, the defendant may, by counterclaim, recover the amount of such excess.

**2. Trial § 36—**

The court is required .to submit such issues as are necessary to settle the material controversies arising on the pleadings, including new matter alleged in the answer, so that the verdict will support a final judgment, but within this rule the form and number of the issues are within the sound discretion of the trial court.

**3. Contracts § 25—**

In this action by a subcontractor against the main contractor to recover the balance due on contract for materials, defendant set up as a counterclaim six items based on omissions and defects in the materials furnished by plaintiff. *Held:* Regardless of the form of the issues the burden was upon defendant to prove the items constituting his counterclaim, and therefore the refusal of the court to submit the single issue tendered by defendant as to the amount due on the counterclaim, and the submission of separate issues as to the amount due plaintiff on the contract and the amounts due defendant on each of the items comprising the counterclaim, will not be held for error.

**4. Evidence § 9—**

The burden of proving a counterclaim alleged in the answer is upon defendant.

**5. Contracts § 12—**

Where the obligations of the parties to a contract are expressed in clear and unambiguous language, they are determinable as questions of law, but when the matter relates to defects and omissions on the part of plaintiff in furnishing the materials specified by the contract, and there is conflicting evidence as to whether the materials furnished actually met the specifications, the question is properly submitted to the jury.

**6. Same—**

In plaintiff's action to recover the balance of the contract price for materials furnished, where the contract is clear that plaintiff, as a matter of law, was not required to furnish certain items under the terms of the agreement, defendant cannot be prejudiced by the submission of issues relating thereto and the finding by the jury thereon in favor of plaintiff.

**7. Same—**

Conduct of the parties giving practical interpretation of their agreement will be considered by the courts when called upon to construe the contract.

**8. Contracts § 29—**

Where the evidence is susceptible to the construction that plaintiff, in furnishing glazed sash, was not under contractual duty to paint same for the protection of the putty, that the sash was rejected by the architect because the putty had dried out and cracked because of want of protective paint, but that the defect was the result of defendant contractor's failure to paint and cover up the putty within a reasonable time after the glazed sash was exposed to the elements, the question of whether the putty cracked because of faulty materials or workmanship provided by plaintiff or because of defendant's neglect, is for the determination of the jury.

APPEAL by defendant from *McKinnon, J.,* July-August Civil-Criminal Term, 1958, of DURHAM, docketed and argued as No. 667 at Fall Term, 1958.

Civil action, involving plaintiff's action and defendant's counterclaim, growing out of a written contract between plaintiff (subcontractor) and defendant (general contractor), whereby plaintiff agreed to furnish to defendant certain building materials for use in the construction of the Commerce Building, North Carolina College, Durham, N. C.

Plaintiff, alleging performance, instituted this action to recover an unpaid balance of $3,123.45 on contract price.

Defendant, answering, denied "as shall be more fully set forth in the further answer, defense and counterclaim," that plaintiff had performed its contract obligations.

Defendant alleged, "AS A FURTHER ANSWER, DEFENSE AND COUNTERCLAIM," that, by reason of plaintiff's failure to perform its contract in respect of six specific items, defendant was required to perform plaintiff's obligations with reference thereto; and, on account thereof, defendant was entitled to recover as damages a total of $3,774.48, "back charges" for said six items. Defendant alleged that the "back charges" exceeded by $651.45 the unpaid balance on the contract price and that it was entitled to recover $651.45 as damages on account of plaintiff's said breach of contract.

Plaintiff, by reply, denied that it had failed to perform its contract obligations in respect of said six specific items.

These documents comprised the written contract:

1. A proposal (letter) dated March 27, 1954, from plaintiff to defendant, wherein plaintiff stated:

"We propose to furnish all doors, weatherstrip window units, gable frames, aluminum window screens, asbestos board for canopy, wood door frames as noted, wood railing, wood door bucks, telephone counter and booth, treating window frames with woodlife, handrail, bulletin and chalk trim, shelving, bookshelves, display cases, storage shelves, transoms, chair rail; for the sum of $17,565.00.

"Exceptions:

"Hardware, catwalk, wood wedges, metal of any kind, or anything else not considered millwork.

"Note: If alternate for finishing auditorium used add $905.00."

2. A purchase order dated June 16, 1954, from defendant to plaintiff, accepted by plaintiff under date of August 5, 1954, which provided:

"PLEASE ENTER OUR ORDER FOR THE FOLLOWING:
"Ship to Wrenn-Wilson Construction Company
Destination—Durham, N. C.
Care of—Commerce Building, North Carolina College
On or Before—As Required
F. O. B.
Via

"INVOICE IN DUPLICATE

"Furnish all millwork, screens and weatherstripped window units for the Commerce Building, North Carolina College, in strict accordance with plans and specifications as prepared by

H. Raymond Weeks, Inc., and in accordance with your proposal of March 27, 1954, modified verbally on June 16, 1954, for the lump sum of—$18,350.00.

"This order covers Alternates A, B and C as they may apply to your work; and further includes the fitting and weatherstripping of sash units and the furnishing of screens. *We do not install screens!*

"No sales tax is applicable to this job according to the 1949 Revenue Act, Chapter 105.

"You are to furnish us certificates showing proper coverage of Workmen's Compensation, Public Liability, and Property Damage insurance.

"Your relations to us will be in every way the same as our relations to the Architect and the Owner."

3. The "Contract Documents for Building Construction and Appurtenant Work. General. Commerce Building, North Carolina College at Durham, Durham, North Carolina." These voluminous documents define the general contractor's obligations in respect of the construction of said Commerce Building.

At trial, the controversy related solely to said six specific items. As indicated below, a separate issue was submitted as to each of these items.

Both plaintiff and defendant offered evidence in support of their respective contentions.

At the conclusion of the evidence, the court approved and submitted the seven issues set out below, to which defendant excepted.

Defendant also excepted to the court's refusal to approve and submit the one issue tendered by defendant, to wit: "What amount, if any, is the defendant entitled to recover from the plaintiff upon its counterclaim?"

The jury's verdict was as follows:

"1. In what amount, if any, is the defendant indebted to the plaintiff under the contract: Answer: $3,123.45. 2. In what amount, if any, is the plaintiff indebted to the defendant by reason of putting vent grills in doors and having to make openings larger to fit grills? Answer: None. 3. In what amount, if any, is the plaintiff indebted to the defendant by reason of furnishing and applying cork at display cases? Answer: $243.87. 4. In what amount, if any, is the plaintiff indebted to the defendant by reason of furnishing, fitting, hinging and putting pulls and catches on access doors to display cases? Answer: None. 5. In what amount, if any, is the plaintiff indebted to the de-

fendant by reason of priming of sash? Answer: None. 6. In what amount, if any, is the plaintiff indebted to the defendant by reason of reglazing rejected wood sash glazing? Answer: None. 7. In what amount, if any, is the plaintiff indebted to the defendant by reason of furnishing and placing rubber bumpers on doors? Answer: None."

Thereupon, the court adjudged that plaintiff have and recover of defendant the sum of $2,879.58 and that defendant pay the costs.

Defendant excepted and appealed.

*Bryant, Lipton, Strayhorn & Bryant for plaintiff, appellee.*

*E. C. Brooks, Jr., and Eugene C. Brooks, III, for defendant, appellant.*

BOBBITT, J. Where a building contract is substantially, but not exactly, performed, the amount recoverable by the contractor depends upon the nature of the defects or omissions. "Where the defects or omissions are of such a character as to be capable of being remedied, the proper rule for measuring the amount recoverable by the contractor is the contract price less the reasonable cost of remedying the defects or omissions so as to make the building conform to the contract." Annotations: 134 Am. St. Rep. 678, *684;* 23 A.L.R. 1435, *1436;* 38 A.L.R. 1383; 65 A.L.R. 1297, *1298.*

In an action to recover the unpaid portion of the contract price, the defendant, under his denial of plaintiff's alleged performance, may show, in diminution of plaintiff's recovery, the reasonable cost of supplying omissions, if any, and of remedying defects, if any; and, if such costs exceed the unpaid portion of the contract price, the defendant may, by counterclaim, recover the amount of such excess. *Howie v. Rea,* 70 N.C. 559; *Moss v. Knitting Mills,* 190 N.C. 644, 130 S.E. 635; *Mason v. Andrews,* 192 N.C. 135, 133 S.E. 402.

While under certain circumstances *quantum meruit* may be the measure of recovery, *Poe v. Town of Brevard,* 174 N.C. 710, 94 S.E. 420, "when it is said that in cases of this character the plaintiff may recover on a *quantum meruit* or *valebat,* nothing more is intended than that he may recover whatever he may be entitled to, not exceeding the price fixed by the special contract." Annotation: 134 Am. St. Rep. 678, *685.*

The general rule stated above is applicable here. Everything required to be done under the contract has been fully performed. If plaintiff breached its contract in respect of omissions or defects, defendant has supplied the omissions and has remedied the defects. The controversy turns on whether it had the right to do so *for the*

*account of plaintiff.* If so, defendant is entitled to "back charge" (defendant's expression) all reasonable amounts expended for such purpose.

The agreed case on appeal states: "The contract price between the plaintiff and the defendant, including certain extras, amounted to $19,103.08. The defendant paid to said plaintiff or received credit for all of said sum of money with the exception of $3,123.45." (Note: The record discloses that plaintiff has given defendant full credit for plaintiff's failure to comply with the contract in respect of certain items not involved in this controversy.)

Nothing else appearing, plaintiff was entitled to recover $3,123.45; but, under its (controverted) allegations, defendant was required to pay $3,774.48 to supply omissions and to remedy defects caused by plaintiff's failure to perform its contract obligations.

Defendant's assignments of error are based on exceptions to the issues and to the court's instructions as to burden of proof and other features.

G.S. 1-200 requires that the court submit such issues as are necessary to settle the material controversies arising on the pleadings, including new matter alleged in the answer, so that the answers thereto will support a final judgment. *Coulbourn v. Armstrong,* 243 N.C. 663, 91 S.E. 2d 912, and cases cited. "Ordinarily the form and number of the issues in the trial of a civil action are left to the sound discretion of the judge and a party cannot complain because a particular issue was not submitted to the jury in the form tendered by him." *Griffin v. Insurance Co.,* 225 N.C. 684, 36 S.E. 2d 225; *O'Briant v. O'Briant,* 239 N.C. 101, 79 S.E. 2d 252, and cases cited.

Whether, considering the pleadings and the agreed facts, the first issue was necessary, need not be decided. Suffice to say, the submission of the first issue and the court's instructions thereon do not disclose prejudicial error; for the court made it quite plain that the issues were interrelated and that the respective rights of the parties in relation to the six controverted items would be determined, as was done, by the jury's answers to the subsequent issues.

An answer to the single issue tendered by defendant would have determined what amount, if any, defendant was entitled to recover from plaintiff on its alleged counterclaim for $651.45. The burden of proving its counterclaim was on defendant. *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16. If this single issue had been submitted, defendant, to be entitled to an answer in its favor, would have been required to show that plaintiff had breached its contract in respect of one or more of said six specific items and that the reasonable cost of

supplying the omissions and of remedying the defects exceeded $3,123.45. The mere fact that the court, in its discretion, submitted a separate issue as to each of the six specific items in controversy would seem insufficient to affect the burden of proof; for these six issues, considered together, presented for determination the identical questions that would have been presented if the issue tendered by defendant had been submitted.

Here we need not determine the rule applicable if defendant had alleged the six controverted items solely as a defense, that is, in diminution of the amount plaintiff was entitled to recover. The issues submitted (except the first) arise on the allegations of defendant's "FURTHER ANSWER, DEFENSE AND COUNTERCLAIM" and plaintiff's reply thereto. The six controverted items are not alleged solely as a defense but are alleged as the basis for a recovery by defendant from plaintiff. Certainly the burden of proof is not divisible so that it would rest on plaintiff up to $3,123.45 and on defendant for any amount in excess of $3,123.45. Under the pleadings and admitted facts, when defendant elected to allege and to prosecute its counterclaim on the basis of the six controverted items, it thereby assumed the burden of proof with reference thereto for all purposes. Compare *Ice Co. v. Construction Co.,* 194 N.C. 407, 139 S.E. 771.

In considering the court's instructions relating to issues 2-7, inclusive, these facts are noted:

1. As to issues 2, 3, 4, 5 and 7, the court placed the burden of proof on defendant. As to issue 6, the court's instructions as to burden of proof will be discussed below.

2. The items involved in issues 2, 3, 4, 5 and 7 relate to alleged omissions. The item involved in issue 6 relates to alleged defective performance.

3. The third issue was answered in defendant's favor for the full amount ($243.87) alleged. The judgment gives defendant full credit therefor.

Unquestionably, as defendant contends, when the terms of a written contract are explicit, the legal obligations of the respective parties are determinable as questions of law. *Howland v. Stitzer,* 240 N.C. 689, 696, 84 S.E. 2d 167, and cases cited. The general rule, well established, is thus summarized in *Wallace v. Bellamy,* 199 N.C. 759, 763, 155 S.E. 856, as follows: "In the interpretation of contracts the general rule is that a court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language; but if the terms are equivocal or ambiguous the jury may in proper

cases determine the meaning of the words in which the agreement is expressed."

The application of this general rule depends upon the facts of each case. For the reasons indicated below, the court did not err in failing to construe the contract in defendant's favor as a matter of law.

Defendant emphasizes this sentence in its purchase order of June 16, 1954: "Your relations to us will be in every way the same as our relations to the Architect and the Owner." We do not think this sentence may be reasonably construed as imposing upon plaintiff the obligation to do more than to furnish in accordance with the architect's plans and specifications the particular items covered by its written contract with defendant.

As to the second issue, we find nothing in the written contract or elsewhere obligating plaintiff to furnish the (metal) grills. If it be conceded that the evidence was sufficient to support a finding that the openings for the grills as provided by plaintiff did not comply with the plans and specifications, certainly the evidence did not require such finding.

As to the seventh issue, we find nothing in the contract or elsewhere obligating plaintiff to furnish and place rubber bumpers on doors, nor do we find any evidence that the doors as provided by plaintiff were not in accordance with the plans and specifications.

As to the fourth issue, plaintiff's proposal of March 27, 1954, referred to in the purchase order of June 16, 1954, specifically excepts from plaintiff's obligations: "Hardware, catwalk, wood wedges, metal of any kind, or anything else not considered millwork." The fact that defendant was obligated to furnish the items involved in this issue is beside the point. Plaintiff was obligated to furnish only those items embraced in its contract with defendant; and, as indicated, these items fall within the specific exceptions.

As to the fifth issue, these facts are noted: Plaintiff was obligated to furnish the window sash. Admittedly, this obligated plaintiff to place the glass in the sash and to put putty on the glass to hold it to the sash, an operation known as glazing. The controversy is whether plaintiff was obligated to prime the sash, that is, put on a first coat of paint. Defendant relies on this provision of the general contract: "Sash shall be primed and glazed *at* the factory." (Our italics) Admittedly, the priming was to be done and was done *at* plaintiff's place of business. However, it was not done by plaintiff; and plaintiff insists that it had no obligation to prime (paint) the sash. Plaintiff cites a provision of the general contract, under "PAINTING AND

FINISHING," which provides: "The following items will be primed by manufacturer: . . ." (Sash are *not* included.)

Plaintiff's evidence tends to show that it is in the lumber business, that no painting is done by it. Conflicting evidence was offered as to the general custom relating to the priming of sash by the manufacturer thereof. *McAden v. Craig*, 222 N.C. 497, 500, 24 S.E. 2d 1.

The evidence tends to show that the work proceeded as follows: After plaintiff had manufactured and inspected the sash, defendant was notified. Defendant arranged for and sent painters to plaintiff's place of business. Plaintiff made room for these painters to paint the sash at its place of business. When the painters finished their work the sash were then glazed by plaintiff and inspected. Thereafter the sash were delivered to the job.

We find nothing in the record to indicate that defendant contemplated making a "back charge" for its costs in having the priming done, or for any of the items involved in the issues discussed above, prior to its letter to plaintiff of September 30, 1955, when it advised plaintiff that the architect had rejected "the wood sash glazing," the controverted item involved in the sixth issue.

As to all controverted items except that involved in the sixth issue, the evidence tends strongly to support the view that the parties, by their conduct, interpreted the contract in accordance with plaintiff's present contentions. *Hughes v. Long*, 212 N.C. 236, 238, 193 S.E. 27; *Trust Co. v. Processing Co.*, 242 N.C. 370, 379, 88 S.E. 2d 233, and cases cited.

Having reached the conclusion that defendant has failed to show prejudicial error in respect of any of the issues discussed above, we direct attention now to the sixth issue. Defendant alleged that it had been required to pay $2,956.20 to have the rejected wood sash reglazed. Indeed, both in respect of amount and otherwise the principal controversy relates to the sixth issue.

Defendant offered evidence to the effect that the architect, by his letter of September 26, 1955, to defendant, rejected the window sash and required that the sash be reglazed; and that the reglazing was done by the Pritchard Glass Company at a cost to defendant of $2,956.20.

Defendant offered evidence to the effect that, when rejected, the putty had cracked and in places had fallen out; that water seeped behind the glass and wet the wood, thereby causing the wood to expand; and that this pushed the putty off and caused further deterioration.

The contract did not require "back bedding," that is, putty on the

inside as well as on the outside of the glass. The glazing compound used by plaintiff was approved by the architect. An employee of Pritchard Glass Company, witness for defendant, testified that the putty compound used by plaintiff "was just as good as what we used in reglazing the sash."

A witness for defendant testified: "I have an opinion satisfactory to myself, upon my inspection of the windows, that the glazing compound had dried up, and the oils had all evaporated from it. As a result of that, the water seeped through the windows into the inside of the building." Another witness for defendant testified: "Heat from the weather will draw the oils out of putty, and once the oil is drawn out of putty, the putty tends to become dry and brittle." A witness for plaintiff testified: "Putty should be painted over and covered up within ten to thirty days after installation, dependent upon the temperature of the air outside. In my opinion the cause of the putty having no oil in it came entirely from the exposure to the elements, to the heat, that is, it had been out there too long without any covering over it—without any protection."

Mr. O. Z. Wrenn, Jr., defendant's president and treasurer, testified: "It would sound reasonable that the windows were delivered as early in 1955 as February and March. At the time we wrote the Durham Lumber Company on September 30, 1955 the windows had not had an outside coat of paint put over the putty."

The crucial question involved in the sixth issue was whether the putty cracked and became defective because of faulty materials or workmanship provided by plaintiff or by defendant's negligent failure to paint over and cover up the putty within a reasonable time after the glazed sash was exposed to the elements. Upon conflicting evidence, this question was for jury determination. Consideration of the charge on the sixth issue does not disclose prejudicial error.

It is noteworthy that the court, bearing upon the sixth issue, instructed the jury as follows: "On that issue the burden is on the plaintiff to satisfy you by the greater weight of the evidence that it did perform its obligation in respect to the glazing and furnishing and making these windows, and that it did perform its contract in that respect." If the jury failed to so find, so the court instructed the jury, but found that plaintiff's default caused damage to defendant, then the jury's answer would be an amount equal to the reasonable cost of remedying the damage caused by plaintiff's default. In view of what is stated above in respect of the burden of proof, these instructions were not unfavorable to defendant.

It would serve no useful purpose to discuss in further detail de-

fendant's numerous assignments of error. Each has been carefully considered. Upon consideration of the whole case, we find no error prejudicial to defendant.

No error.