**VANCOUVER PLYWOOD COMPANY,**
Appellant,
v.
**GODLEY CONSTRUCTION COMPANY,**
Inc., Appellee.
**No. 11317.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 7, 1967.

Decided March 6, 1968.

---

4. National Education Research Bulletin, Volume 44, Number 3 (1966).

5. (1965), 354 F.2d 352, 173 Ct.Cl. 723.

6. Id. at 354.

Ernest S. DeLaney, Jr., Charlotte, N. C. (Bradley, Gebhardt, DeLaney & Millette, Charlotte, N. C., on brief), for appellant.

J. J. Wade, Jr., Charlotte, N. C. (Wardlow, Knox, Caudle & Wade, Charlotte, N. C., on brief), for appellee.

Before SOBELOFF and BRYAN, Circuit Judges, and MARVIN JONES, Senior Judge *, U. S. Court of Claims.

SOBELOFF, Circuit Judge:

Dissatisfied with the amount awarded it by the jury, Vancouver Plywood Company, plaintiff-appellant, appeals from a judgment in its favor. The challenge is chiefly to the admission of certain evidence pertaining to the issue of damages. Jurisdiction of the action is based upon diversity of citizenship.

Under the terms of its contract with Vancouver, Godley Construction Company was to purchase a lot and build thereon a single plant to include a manufacturing area, warehouse and offices. The building was to be constructed in compliance with specifications, the relevant portion providing:

"All concrete for floor slabs and reinforced footings will be 3000 PSI [pounds per square inch] strength. Interior floor slabs will be 4″ thick reinforced by 6 x 6/10–10 mesh poured on top of a layer of 4 mil polyethylene paper which will be laid on top of a 2″ sand fill."

The structure was completed on December 11, 1963, at which time Godley delivered possession to Vancouver and was paid in full. Shortly after Vancouver commenced operations in the building, it discovered that the concrete in the aisleways in the manufacturing area was beginning to crack and deteriorate. Godley, promptly advised of the problem, agreed to employ an independent testing laboratory to examine the concrete floors. When the tests indicated that the cement in the defective areas was substantially below the standards specified in the contract, Godley offered to repair the faulty segments at its own expense. Vancouver rejected the offer, insisting that the whole slab was below specifications and that it was therefore entitled to a new floor for the entire plant. Unable to reach a settlement with Godley, Vancouver brought this action.

At trial, Vancouver contended that the contract had been breached and that the breach could be remedied only by breaking out the existing concrete slab and re-pouring the entire floor with 3000 PSI cement, four inches thick. The cost of the entire operation was estimated at $86,500. Vancouver offered further testimony that it had contracted for a $330,000 building complex but, because of the defective floors, had received a building with an estimated worth of only $275,000.

Godley, on the other hand, denied that it had breached the contract. It argued that as general contractor it had the right "to trust the integrity of its [concrete] supplier" especially when the concrete company employed for the job was not its regular supplier but one explicitly designated by Vancouver. As an additional answer, Godley maintained that the deterioration had been "caused by use by the plaintiff in its business of the floor in a manner other than the purposes for which it was constructed." Its witness, Edward Wannamaker, the only experienced mechanical engineer called, testified that the independent laboratory's test results were inconclusive since Godley had, in compliance with Vancouver's specific instructions, "rough finished" the floor without applying a curing compound ordinarily used after a new concrete floor has been poured. Other witnesses testified that the company could remedy the problem by either (1) replacing the faulty sections at a cost of $5,500 or (2) repouring four inches of concrete on top of the existing concrete slab in the manufacturing area for $10,600. They also testified that the estimated value of the entire building at the time Vancouver took possession, even

* Sitting by designation.

with the defective floor, exceeded the $330,000 contract price.

That North Carolina law governs this controversy is not questioned. Arnold v. Ray Charles Enterprises, Inc., 264 N.C. 92, 141 S.E.2d 14 (1965). The trial judge, with the consent of both parties, therefore relied exclusively on the North Carolina case of Robbins v. C. W. Myers Trading Post, Inc., 251 N.C. 663, 111 S.E.2d 884, 887 (1960), and instructed the jury on the issue of damages as follows:

" 'The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case. In a majority of jurisdictions, where the defects are such that they may be remedied without the destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract. But where, in order to conform the work to the contract requirements, a substantial part of what has been done must be undone, and the contractor has acted in good faith, or the owner has taken possession, the latter is not permitted to recover the cost of making the change, but may recover the difference in value. * * * The difference referred to is the difference between the value of the house contracted for and the value of the house built—the

values to be determined as of the date of tender or delivery of possession to the owner.' "

The jury, in a special verdict, found that the parties had entered into a construction contract, that the contract had been breached, and that Vancouver was entitled to $6,000 damages.

 On appeal, Vancouver contends that the trial judge erred in permitting Godley's witnesses to testify, over objection, concerning the cost of replacing only the defective areas or of laying an additional four inches of concrete over the existing floor [1] when there was no evidence that either would remedy the breach. It was Vancouver's contention that the entire floor had to be replaced. Vancouver, having the burden of establishing the extent of the damages, Durham Lumber Co. v. Wrenn-Wilson Construction Co., 249 N.C. 680, 107 S.E.2d 538 (1959), nevertheless failed to tender evidence as to the condition of the floor in the non-defective areas. It merely premised its claim on a presumption that if the floor was below the specified strength in the deteriorated areas, it was probably substandard throughout.

The contractor maintained that the replacement of the defective sections would in fact remedy the breach. While it made no showing that the non-defective areas of the cement floor met the requirements specified in the contract, its testimony indicated that defects in a portion of a concrete floor do not necessarily support a conclusion that the entire floor is substandard. Its expert witness Wannamaker testified that it is the accepted practice to repair cement floors by cutting away defective areas and repouring new cement.

---

1. Vancouver argued that the addition of four inches of concrete in the manufacturing area would create an uneven floor and necessitate the use of ramps between the manufacturing area and other sections of the plant. This, Vancouver contended, would fail to bring the floor into compliance with the contractual specifications which provided for a level floor throughout. The cost of pouring the additional four inches was estimated at $10,600.

By awarding only $6,000, the jury obviously was of the opinion that it was not necessary to pour four additional inches of concrete over the entire floor and that repair of the defective aisles alone would cure the breach of the contract. The admission of the challenged testimony therefore was not prejudicial and will not justify a new trial. Brown v. Griffin, 263 N.C. 61, 138 S.E.2d 823, 825 (1964)

This conflict raised a purely factual question that was wholly within the province of the jury. It was for the fact finder to resolve the issue on the basis of the opposing testimony of the two parties as to the extent of repair necessary to bring the floor into conformity with the contract's specifications, and to award damages consistent with the judge's instructions. Robbins v. C. W. Myers Trading Post, Inc., supra, 111 S.E.2d at 887; Durham Lumber Co. v. Wrenn-Wilson Construction Co., supra, 107 S.E.2d at 544. This court has no authority to usurp the jury's function.

Also without merit is Vancouver's second contention that the trial judge erred in admitting appellee's testimony relating to the variance between the use of the floor envisioned at the time the specifications were drawn and Vancouver's ultimate use of it. The testimony was offered in support of Godley's allegation that any deterioration resulted from Vancouver's employing heavier loads than were foreseen at the time of the contract. This testimony was relevant solely to the question of breach and not the issue of damages. Since the jury concluded, as the appellant contended, that the contract had been breached, any error in admitting this testimony was rendered harmless as to it. It is well established in North Carolina that "[n]ew trials are not awarded for nonprejudicial errors." Brown v. Griffin, 263 N.C. 61, 138 S.E.2d 823, 825 (1964).

As its final assignment of error, Vancouver argues that it was entitled to interest on the judgment from the date of the breach. Enunciating the rule for determining the time when interest begins to run, the North Carolina Supreme Court has stated, "[w]hen the amount of damages in a breach of contract action is ascertained from the contract itself, or from relevant evidence, or from both, interest should be allowed from the date of the breach." General Metals, Inc. v. Truitt Manufacturing Co., 259 N.C. 709, 131 S.E.2d 360, 363 (1963). Conversely, when the damages sought are unliquidated and cannot be readily "ascertained by mere computation, or by a legal or recognized standard," interest is not awarded from the time of the breach because the party liable could not have determined the amount owed and therefore could not be in default for not paying. Harris & Harris Construction Co. v. Crain & Denbo, Inc., 256 N.C. 110, 123 S.E.2d 590, 602 (1962).

It appears that the amount owed by Godley could not be determined with any degree of certainty until judgment was rendered. Even after the jury found that the contract had been breached, the scope of possible damages ranged from a nominal sum, Robbins v. C. W. Myers Trading Post, Inc., supra, 111 S.E.2d at 886, to $100,000 claimed by Vancouver. Applying the rule of the *Harris* case, supra, we conclude that the trial court did not err in failing to award interest from the date of the breach.

The District Court's judgment is

Affirmed.