**GERBER PRODUCTS COMPANY,**
Plaintiff–Appellee,

v.

**FISHER TANK COMPANY,**
Defendant–Appellant,

**Earl Goodwin, Jr., d/b/a Commercial Coatings Company,**
Defendant–Appellee,

and

**Commercial Coatings Company of Apex, Defendant.**

No. 86–3039.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1987.

Decided Nov. 17, 1987.

Thomas David Schroeder (S. Fraley Bost; William F. Womble, Jr.; Womble, Carlyle, Sandridge & Rice, on brief), for defendant-appellant.

Hatcher Byrd Kincheloe, Jr. (John F. Morris; Hedrick, Eatman, Gardner & Kincheloe on brief); Phillip J. Smith (Michelle Rippon; Van Winkle, Buck, Wall, Stames and Davis, P.A. on brief), for appellees.

Before RUSSELL, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

HAYNSWORTH, Senior Circuit Judge:

A painting and lining contractor, apparently of relatively small size, applied the wrong liner on the interior of a large hot water storage tank used in the processing of baby foods. The consequences may approach the disastrous, but a court may not shift blame away from the one party whose error or mistake was the sole cause of the economic injury.

In 1983 Gerber entered into a contract with Fisher Tank Company for the construction and installation of a large hot water storage tank for use in the processing of baby foods in a Gerber plant near Asheville, North Carolina. In the production process, some of the hot water was to be mixed with food ingredients, a fact of which Fisher was informed. The contract specified that the tank's lining should be Plasite 7156, a liner approved by the FDA and the USDA for use in containers in which ingredients in food would be stored or processed. There was also an express warranty by Fisher that the finished tank would meet all applicable federal and state requirements for containers used in the processing of food.

Fisher, in turn, entered into a subcontract with Earl Goodwin Jr., doing business as Commercial Coatings Company, for the application of the liner. The subcontract also provided that the lining material should be Plasite 7156, and the jury found that there was an express warranty by Commercial Coatings that the liner would meet all applicable federal and state requirements for containers used in the processing of foods.

The finished tank was placed in operation in February 1984. After about two weeks of operation, however, quality control tests disclosed a metallic "off" flavor to the food. Gerber traced the problem to the new hot water storage tank. After further testing of the tank's lining surface, Gerber concluded that the lining material had not been Plasite 7156 and that the liner had not been properly cured.

Invoking the diversity jurisdiction of the district court, Gerber filed this action against Fisher Tank Company and Earl Goodwin, trading as Commercial Coatings Company. The responsive pleadings of the two defendants went not so much to Gerber's claim against them as to their rights against each other.

At trial, Gerber undertook to prove that the lining material used was not Plasite 7156 but Plasite 7155, a material which had not been approved for lining containers that would be contacted by ingredients of food. It also undertook to prove that the lining had not been cured. At trial, there was solid proof of both facts, and, on appeal, the parties tacitly accept both facts as established.

On special interrogatories, the jury found that Fisher had broken its contract with Gerber and violated its express warranty that the finished tank would meet all requirements of federal and state law. It found that the damages suffered by Gerber amounted to $600,000 and fixed Fisher's liability to Gerber in that amount. The jury found that Commercial Coatings had violated express warranties to Gerber that the liner would conform to the contract documents and to all federal and state requirements. It also found that Commercial Coatings had broken its contract with Fisher. It assessed damages against it in the amount of $250,000, not the full $600,000.

On appeal, the principal arguments are between Fisher and Commercial Coatings over their mutual rights and duties. Gerber is a substantially inactive party to this appeal except that it defends the award by the district court of prejudgment interest, an award which the defendants seriously question.

We conclude that Commercial Coatings should be held responsible for all of Gerber's damages and that its agreement obligated it to indemnify Fisher in that amount. We conclude that the district court erred in awarding prejudgment interest to Gerber.

I.

In this court Commercial Coatings would accept the jury's verdict against it of $250,-000. It accepts the verdict as the resolution of issues of fact and contends that the district court should not treat them as issues of law. Commercial Coatings contends that the law did not require Gerber to destroy the baby food product produced with a nonconforming hot water storage tank, that Gerber, without showing that the product was poisonous or deleterious, should have sold its products in the ordinary course of business and that neither

Commercial Coatings nor Fisher should be required to reimburse Gerber for the value of those products. These contentions are based on the law's treatment of additives.

■ The liner, used as a food-contact surface in producing, processing or holding food, is an indirect food additive under the food and drug laws. *See* 21 U.S.C.A. § 321(s) (West 1972); 21 C.F.R. § 175.300 (1987). As a food additive, the liner is deemed unsafe until it has received approval from the Secretary of Health and Human Services. *See* 21 U.S.C.A. § 348(a)(1) (West 1972); *Natick Paperboard Corp. v. Weinberger,* 525 F.2d 1103, 1105–06, (1st Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976). Food products produced with an unapproved additive are treated as adulterated and prohibited. *See* 21 U.S.C.A. § 342(a)(2)(C) (West 1972); *see also United States v. An Article of Food,* 678 F.2d 735, 740 (7th Cir.1982).

It is a narrow exception to this general rule upon which Commercial Coatings relies.

■ The statute distinguishes between additives that are intended to become part of the food or incidentally added to the food and those additives which are accidental additions. 21 U.S.C.A. § 321(s) (West 1972); S. Rep. No. 2422, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Admin.News 5300, 5304. Accidental additives are not considered "food additives," and, because their addition is accidental, they are not subject to the pre-use approval system prescribed by the statute. Instead, they come under the general provisions of the Food, Drug, and Cosmetic Act dealing with poisonous and deleterious substances. The product is not automatically banned, but it may be banned if the government shoulders the burden of proving that the product violates the statutory provisions about poisonous and deleterious substances.

This narrow exception is illustrated by *Burke Pest Control, Inc. v. Joseph Schlitz Brewing Co.,* 438 So.2d 95 (Fla.Dist.Ct. App.1983); *see also* S.Rep. No. 2422, *supra,* at 5304.

In *Schlitz Brewing Co.,* the exterminator was engaged to fumigate a warehouse in which open beer cans were stored. He used a fumigant which left a small residue in many of the cans. The residue contained an almost infinitesimal quantity of chloropicrin. The Florida District Court of Appeal for the Second District found that the chloropicrin was an accidental additive and that Schlitz might have filled the beer cans and marketed them since there had been no affirmative showing that the small quantity of chloropicrin would make the beer a poisonous or deleterious substance. It was clear that Schlitz never intended to add any residue from the fumigant to its beer and that, as to it, the addition was entirely accidental.

■ This is not such a case, for Gerber intended the hot water it used as a food ingredient to be in contact with the liner of the tank. Any additive it picked up from the liner was an indirect food additive within the usual rules requiring the Secretary's prior approval. As to Gerber, it was "accidental" in the sense that Gerber had clearly intended that Plasite 7156 be used, not Plasite 7155. This may suggest Gerber's moral innocence, but the intention that a food ingredient be regularly and repeatedly placed in contact with a lined surface prevents this case from being controlled by the narrow exception for "accidental additives" coming in as the result of an event or conduct which was intended to have no effect upon any food or food ingredient.

Moreover, in this context, the contention misses the mark. At the very least, Gerber reasonably believed that the law forbade its marketing its contaminated product. The defendants in this case have no standing to insist that Gerber should have undertaken to minimize its loss by the risky course of undertaking to market its contaminated foods when there was abundant reason to believe that such marketing activity would be unlawful.

## II.

■ Commercial Coatings contends that it was not responsible for curing the liner and that the fact that the jury assessed damages against it in a lesser amount than those assessed against Fisher was because

of Fisher's separate default in the duty of effecting a cure. This is speculative, for the jury made no explicit finding about the matter.

In the subcontract between Fisher and Commercial Coatings there is no explicit reference to curing the liner. The subcontract did provide, however, that the liner was to be applied in accordance with the specifications contained in Gerber's purchase order. The specifications contained a curing requirement.

It is idle to speculate on this matter, however, for the error in applying Plasite 7155 instead of Plasite 7156 was uncorrectable by curing. There was some evidence that had the Plasite 7155 liner been properly cured, a metallic flavor would not have been transferred to the food product, but the tank would still have contained a liner which the Secretary had not approved for use in containers in the processing of food. No matter what steps had been taken to effect a cure of the lining material, the use of the container lined with that material would have remained unlawful, and Gerber would have the same damages.

### III.

■ Prejudgment interest was improperly assessed.

In 1985, § 24–5 of the North Carolina General Statutes was amended to provide for the assessment of prejudgment interest in contract actions running from the time of breach. By its terms, however, the amendment is inapplicable to pending actions such as this one. In its unamended form, § 24–5 permits prejudgment interest when the damages are liquidated or ascertainable from the contract itself or subject to computation under a legal or recognized standard. *See Rose v. Vulcan Materials Co.*, 282 N.C. 643, 194 S.E.2d 521, 540 (1973); *General Metals, Inc. v. Truitt Mfg. Co.*, 259 N.C. 709, 131 S.E.2d 360, 363 (1963); *see also Hyde v. Land-of-Sky Regional Council*, 572 F.2d 988, 993 (4th Cir.1978). In its earlier form, the North Carolina statute authorized imposition of prejudgment interest only when, at the time of breach, the defendant could have determined the amount of the damages with some certainty and thus have had an

opportunity to foreclose litigation by payment. *See Harris & Harris Constr. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 123 S.E.2d 590, 602 (1962); *Hyde v. Land-of-Sky Regional Council, supra; Vancouver Plywood Co. v. Godley Constr. Co.*, 393 F.2d 295, 299 (4th Cir.1968).

Gerber's damage claim was entirely unliquidated. Gerber's claims, aggregating approximately $2,000,000, included the cost of lost products, laboratory testing, product retrieval and product disposal. Apparently the jury thought that Gerber did less than it might have done to mitigate its damages, for it awarded Gerber only $600,000, but Fisher had no basis for an advance prediction with any assurance of the amount a jury would ultimately award.

Since, at the time of breach, Fisher had no basis for ascertaining the amount it owed, it should not have been charged with payment of prejudgment interest.

### IV.

The award of prejudgment interest to Gerber is vacated, and the judgment against Commercial Coatings is reversed and the case remanded for entry of judgment against Commercial Coatings for the entire amount of Gerber's damages and for full indemnification of Fisher.

REVERSED AND REMANDED.