W. F. PHILLIPS, C. C. PHILLIPS, AND B. M. HAGLER, JR., PARTNERS T/A P & H PLASTERING COMPANY, PLAINTIFFS v. PHILLIPS CONSTRUCTION COMPANY, INC., DEFENDANT.

(Filed 6 May, 1964.)

**1. Contracts § 12—**

Where the language in a contract is clear and unambiguous, it is the function of the court to declare its meaning in the light of the undisputed evidence as to the custom, usage, and meaning of its terms.

**2. Same; Customs and Usages—**

Words of a contract referring to a particular trade will be interpreted by the courts according to their widely accepted trade meaning.

**3. Same—**

Where the contract under which defendants plastered the houses in question stipulated that defendants should perform all items required for a complete and first-class job whether particularly mentioned or not, and the particular specifications call for cornerites only for vertical corners, it *is held,* upon final agreement requiring the plastering of walls as well as ceilings, defendants were required to reinforce all wall corners with cornerites upon evidence disclosing that in the trade cornerites are standard for both vertical and horizontal corners when apposite.

**4. Compromise and Settlement—**

Where a check states that it is in full payment for the balance due under the contract, including claims for all work performed in addition to the

subject contract, acceptance of the check constitutes a settlement excluding claim for additional compensation for work beyond that called for in the original agreement.

APPEAL by plaintiff from *Campbell, J.,* October 21, 1963 Regular Schedule "A" Civil Session of MECKLENBURG.

In this action plaintiffs seek to recover $18,000.00 for installing horizontal cornerites in housing units constructed by defendant for the United States Government in South Carolina. They allege that these installations were not included in the original specifications and contract price and that defendant had agreed to pay them for these extras. Defendant denied any such agreement and pleaded an accord and satisfaction. At the close of all the evidence, defendant's motion for judgment as of nonsuit was allowed and plaintiffs appealed.

*Fairley, Hamrick, Hamilton & Monteith for plaintiff.*
*Fleming, Robinson & Bradshaw for defendant.*

SHARP, J. Upon the trial these facts were undisputed:

On October 2, 1957 the defendant, as general contractor, entered into a contract with the United States Government through the Department of the Air Force (Department) to construct eight hundred housing units at Myrtle Beach Air Force Base in South Carolina. On October 15, 1957 defendant and the plaintiffs, a partnership doing business as P & H Plastering Company, executed "an agreement between contractor and sub-contractor," whereby plaintiffs agreed to furnish all materials and perform all work described in the plastering and lathing specifications in defendant's contract with defendant and the Department for a total price of $602,750.00. Insofar as applicable to this subcontract, the plaintiffs and defendant agreed to be bound by the general provisions of defendant's contract with the Department and to assume *inter sese* the same rights and liabilities it fixed for those parties.

The provisions of the lathing and plastering specifications pertinent to this action follow with our enumeration:

(a) "All items required for a complete and first class installation shall be included whether particularly mentioned or not.

(b) "All operations connected with the lath and plastering shall be of a standard that will insure flat, true surfaces free of waves, edges that are straight for their entire length, corners that are straight and true, and accurate vertical and horizontal lines and planes.

(c) "All metal lath shall be installed in accordance with the standard established by 'Specifications for Metal and Furring,' 1950 edition, as published by the Metal Lath Manufacturer's Association, Cleveland 14, Ohio.

(d) "Cornerites for all interior vertical corners shall be reinforced with metal cornerites as manufactured by U. S. Gypsum Company, or equal."

Included in paragraph 2(c) of the general provisions of the contract between defendant and the Department was this stipulation:

"Omissions from the Drawings or Specifications or misdescription of detail of work which are manifestly necessary to carry out the intent of the Drawings and Specifications, or which are customarily performed, shall not relieve the eligible builder from performing such omitted or misdescribed details of work but they shall be performed as if fully and correctly set forth and described in the Drawings and Specifications."

The controversy involved in this action arises out of specification (d) above which refers only to cornerites for interior *vertical* corners. The cornerite referred to is a 3″ x 3″ metal diamond mesh lath angle. It is placed on the plaster base in the corners formed where wall and wall and ceiling abut. Its purpose is to re-inforce the corner and to minimize corner cracks in the plastering. Vertical cornerites are placed in the angle created where two walls adjoin; horizontal cornerites are used where a wall meets the ceiling.

Originally it was contemplated that only the ceilings would be plastered and that the walls in the houses would be of wallboard. In that event, cornerite would not have been used in the horizontal angles. However, the base bid contained plastered walls as an alternative plastering specification. In making their bid for the job, plaintiffs included the cost of vertical cornerites only. However, in computing the amount of their bid, plaintiffs referred to the 1950 edition of "Specifications for Metal & Furring" of the Metal Lath Manufacturer's Association mentioned in specification (c) above. This publication required the installation of cornerite at all horizontal and vertical angles. The North Carolina Building Code, which establishes minimum standards of construction likewise requires both, as do FHA regulations. During the construction of the first house, the government inspector informed plaintiffs that he would not approve their work unless they installed both vertical and horizontal cornerites; whereupon plaintiffs installed both at an additional cost of $18,250.00.

W. F. Phillips, one of the plaintiffs and a partner in the P & H Plastering Company, testified that approximately two weeks later he informed Dwight Phillips, president of the defendant corporation, of the inspector's requirement. The president told him to go ahead, that defendant would see that plaintiffs were paid for it. Dwight Phillips denied that he made this promise. His version was that he told Mr. Phillips he would present his claim to the Department by a "change order" and send it through "proper channels," and that defendant made no commitment to plaintiffs "except to the extent that money was recovered from the Air Force." This discrepancy is the only real conflict in the evidence in the case.

In May 1958 defendant wrote the project supervisor with reference to plaintiff's claim and he also sent a "change-order request" to the contracting office for additional compensation for the horizontal cornerite since no specific mention of it had been made in the specifications. Both replied immediately. The contracting office said that horizontal cornerites come within paragraph (a) of the specifications quoted above. The supervisor pointed out that while the base bid provided for sheetrock walls with crown mold, the alternate specification of plastered walls was employed. Therefore, good construction practices required the use of horizontal cornerites in order to avoid cracks. Defendant offered the evidence of three witnesses, found to be experts in the plastering and construction trade, that where both the walls and ceilings of a dwelling are plastered, it is the general practice to install both vertical and horizontal cornerites, and that a first-class installation requires cornerites in *all* interior angles whether specifically mentioned or not.

Mr. W. F. Phillips himself testified:

> "The purpose of installing cornerites at the vertical angles which is a corner between two walls is to eliminate cracks and it would be just as important to install them at the intersection of the ceiling and the wall if a person wanted it."

Plaintiffs filed no written claim with either defendant or the Department until May 20, 1959 when plaintiff W. F. Phillips signed a letter to the contracting officer, prepared for plaintiffs by defendant, in which they demanded the sum of $18,319.52. The Air Force denied the "change-order requests" and no payment of any kind was made in connection with them. Plaintiffs made no request to defendant to appeal this denial to the Contract Board of Appeals in Washington, D. C.

Plaintiffs finished their work in November 1959. On July 7, 1960 defendant's president called B. M. Hagler, Jr., one of the plaintiff part-

ners, and told him to come for "the final check." This check was made payable to the plaintiff in the amount of $3,451.89. On the back of·the check, above the line for endorsement, was the following statement:

> "The payee by endorsement hereon acknowledges receipt of this final payment in the amount of $3,451.89 as full payment and complete settlement for all work performed under subcontract dated October 15, 1957, with Phillips Construction Co., Inc., and/ or D. L. Phillips, Builder, and/or Myrtle Beach AFB Housing, Inc., and/or No. 2 and 3 and claims for any and all work performed in addition to subject subcontract at the Myrtle Beach AFB Housing Projects."

Beneath this statement W. F. Phillips endorsed the check by first signing the partnership's trade name and then his own. The plaintiffs received the money and executed lien waivers stating that all sums due under the subcontract had been paid.

To state the facts is to decide this case. The contract, prepared and executed by experts in the building industry, is free from ambiguity. It was, therefore, for the court to interpret and declare its meaning in the light of the undisputed evidence as to the custom, usage, and meaning of its terms in the plastering trade. *Briggs v. Mills, Inc.,* 251 N.C. 642, 111 S.E. 2d 841; *Young v. Mica Co.,* 237 N.C. 644, 75 S.E. 2d 795; *Wallace v. Bellamy,* 199 N.C. 759, 155 S.E. 856. Ordinarily, the court will interpret words used in a contract with reference to a particular trade according to their widely accepted trade meaning. 12 Am. Jur. *Contracts* § 237.

When the Department exercised its alternative election to use plastered walls in the housing project instead of sheetrock, the plaintiffs were still required to furnish all items necessary for first class construction whether particularly mentioned or not. The only inference to be drawn from all the evidence in this case is that, for the construction involved here, horizontal cornerites were thus required. However, be that as it may, when plaintiffs accepted and cashed defendant's "final check" which stated that it was in full payment and final settlement, not only for all work under the subcontract, but for all claims for any additional work, plaintiffs discharged their claim for any additional compensation. "It is well recognized that when, in case of a disputed account between parties, a check is given and received clearly purporting to be in full or when such check is given and from the facts and attendant circumstances it clearly appears that it is to be received in full of all indebtedness of a given character or all indebtedness to date, the courts will allow to such a payment the effect contended for."

*Hardware Company v. Farmers Federation*, 195 N.C. 702, 143 S.E. 471; *Durant v. Powell*, 215 N.C. 628, 2 S.E. 2d 884.

The judgment of the court below is

Affirmed.