CAPE FEAR ELECTRIC COMPANY, INC. v. STAR NEWS NEWS-PAPERS, INC., ORIGINAL DEFENDANT, AND FRANK I. BALLARD, HERBERT P. McKIM AND ROBERT W. SAWYER, T/A BALLARD, McKIM & SAWYER, AIA ARCHITECTS, ADDITIONAL DEFENDANTS AND THIRD PARTY PLAINTIFFS v. HENRY VON OESEN & ASSOCIATES, INC., THIRD PARTY DEFENDANTS

No. 735DC438

(Filed 7 August 1974)

1. **Contracts § 12— construction of contracts — question for court or for jury**

   Where the language of a contract is plain and unambiguous, the court rather than the jury will declare its meaning, but where the language employed by the parties is ambiguous, the jury may be called upon to determine the true intent of the parties from the words employed by them to express their agreement.

2. **Contracts § 27— action to recover increased construction costs — absence of change order**

   In a contractor's action to recover the increased cost of installing electrical conduit rather than electrical metallic tubing to house electrical circuits running in concrete floor slabs wherein the contract failed to state clearly and expressiy whether the conduit or the metallic tubing was required, the trial court properly directed a verdict for defendant owner where the evidence showed that the contract required that any change in the contract sum be authorized by a change order and that no change order was issued changing the contract sum to reflect the increased cost to the contractor of installing conduit rather than metallic tubing, and there was no evidence that the owner agreed to any modification or waiver of its rights under the contract provisions requiring a change order.

APPEAL by plaintiff from *Barefoot, District Judge,* 27 November 1972 Civil Session of District Court held in NEW HANOVER County.

Plaintiff, Cape Fear Electric Company, Inc. (Contractor), was the low bidder and on 15 April 1969, signed a written contract with original defendant, Star News Newspapers, Inc. (Owner), to perform for $82,961.00 (subsequently increased by Change Orders to $86,365.43) the electrical work called for in drawings and specifications provided by additional defendants, Ballard, McKim & Sawyer (Architects), for the construction of a newspaper office building for Owner. In this action Contractor seeks to recover from Owner an additional $4,716.84 which Contractor alleges is the increased cost of installing electrical conduit rather than electrical metallic tubing (EMT) to house the electrical circuits where they run through or under the concrete floor slabs in the building. Electrical conduit is a heavier and more expensive material and costs more to install than EMT, and Contractor contends the use of the more expensive material was not required by the contract specifications. In its complaint, Contractor alleged that it installed the more expensive material pursuant to instructions from Owner's engineers, that the use of electrical conduit was not required by the specifications or contract and was not included in Contractor's bid, and by reason of these matters Owner is indebted to Contractor in the amount of $4,716.84 with interest.

Owner filed answer denying any indebtedness to Contractor, moved to make Architects additional defendants, and filed a cross-action against Architects in which Owner alleged that in the event the court should determine that Contractor is entitled to any additional monies, the additional cost of the building to the Owner is a liability of Architects for negligence in preparing the specifications or for breach of contract in failing to provide the services required of them under their contract with Owner. Architects in turn filed answer denying liability on account of Owner's cross-action, moved to make Henry Von Oesen & Associates, Inc. (Engineers), a third party defendant, and filed a third party complaint against Engineers in which Architects alleged they employed and relied upon Engineers to prepare the plans and specifications for the electrical work, that Engineers had interpreted and applied the plans and specifications to require the use of conduit instead of EMT for installation of branch circuits in or under concrete floor slabs

in the building, and if Contractor is entitled to recover anything of Owner and Owner is entitled to recover anything of Architects, both of which Architects deny, then any such recovery against Architects would be due solely to the negligence of Engineers in the preparation and interpretation of the plans and specifications for the electrical work. Engineers answered Architects' third party complaint, denying any negligence on the part of Engineers and alleging that the plans and specifications clearly set forth that the branch circuits involved should be constructed with electrical conduit rather than EMT and that this was known to Contractor at the time of the bidding and to Architects when they reviewed the plans and specifications prior to submission of the same for bids.

Upon the trial before judge and jury, Contractor introduced in evidence its written contract with Owner, including the specifications and drawings which were made part of the contract. Paragraph 16.32 of the relevant electrical specifications reads:

"16.32 BRANCH CIRCUITS: Branch circuits will be installed in conduit or electrical metallic tubing with type THW insulated conductors size and number as indicated on the contract drawings."

The contract drawings relating to the electrical work, which were prepared by Engineers, indicated by solid lines the location of the raceways carrying electrical circuits concealed in walls or ceiling and by broken lines the location of raceways concealed in or below the floors, but failed to indicate whether conduit or EMT was to be installed in either location. Paragraph 16.10 of the specifications provided that rigid conduit and EMT should be installed in accordance with pertinent Articles of The National Electrical Code. Art. 348 of that Code, relating to EMT, provided that EMT should not be used "where during installation or afterward, it will be subject to severe physical damage," and that it should not be installed in concrete or in areas subject to severe corrosive influences "[u]nless made of a material judged suitable for the condition, or unless corrosion protection approved for the condition is provided."

Contractor's evidence also showed: Throughout the construction Contractor contended that its contract allowed use of EMT in all circuits. Engineers made no objection to use of EMT in walls and ceilings, but when Contractor started to

install EMT in floors prior to pouring of concrete, Engineers by letter dated 4 June 1969 informed Contractor as follows:

> "Electrical metallic tubing shall not be installed in concrete slabs. It may be used in dry walls or ceiling areas only."

Contractor immediately took the position this constituted a change in the contract and on 13 June 1969, wrote a letter to Architects quoting an increased price of $4,716.84 and requesting a formal Change Order recognizing this increase in contract price, but no Change Order was forthcoming. On 19 June 1969 Contractor again wrote to Architects, acknowledging receipt of a letter of 17 June from the Architects and advising that Contractor was "proceeding with the installation of rigid galvanized conduit for branch circuits in slabs as required by [Architects'] letter," but was doing so under protest and reserving the right to have the dispute settled by arbitration as provided in the general conditions of the project specifications. However, no arbitration of the dispute occurred. There was also evidence that Contractor had completed its work under the contract, installing rigid conduit instead of EMT in the concrete floor slabs, and that it had been paid in full for all work as provided in the contract but had received no payment for the increased cost of installing the conduit instead of EMT in the floor slabs.

At the close of Contractor's evidence the Owner moved for a directed verdict, and all parties stipulated that Owner's Exhibits 1, 2 and 3 could be introduced and considered by the judge in his determination of the motion. These exhibits, together with plaintiff's exhibits, showed the following:

After Contractor wrote to Owner on 29 May 1970 stating that the project was "100% complete" and making a "requisition for final payment" which included the added conduit cost, Architects wrote to Contractor on 24 June 1970, refusing to certify final payment and instructed Contractor:

> "Do not include the added charge of $4,716.84 for conduit in the slab. This has not been approved as you know and our position on this question has been previously stated."

On 18 August 1970, Contractor instituted this action against Owner to recover the $4,716.84 and thereafter, in a letter dated 4 November 1970, wrote to Owner as follows:

"The following is our final billing on the above job.

| | |
|---|---|
| Contract Amount to date | $86,365.43 |
| Less previous payments | 77,728.89 |
| Total due | $ 8,636.54" |

These figures, which did not include the disputed $4,716.84, were subsequently certified by Architects, and by check dated 28 January 1971, issued by Owner and cashed by Contractor, Owner paid Contractor the sum of $8,636.54 shown as the "Total Due" in Contractor's letter to Owner of 4 November 1970.

The court granted Owner's motion for a directed verdict dismissing Contractor's action, and Contractor appealed.

*Poisson, Barnhill, Butler & Martin by M. V. Barnhill, Jr., for plaintiff appellant.*

*Stevens, McGhee, Aycock, Morgan & Lennon by Ellis L. Aycock for original defendant appellee.*

PARKER, Judge.

[1] Where the language of a contract is plain and unambiguous the court rather than the jury will declare its meaning, *Yates v. Brown*, 275 N.C. 634, 170 S.E. 2d 477, but where the language employed by the parties is ambiguous the jury may be called upon to determine the true intent of the parties from the words employed by them to express their agreement, *Lumber Co. v. Construction Co.*, 249 N.C. 680, 107 S.E. 2d 538. Here, the written contract failed to state clearly and expressly whether the heavier and more expensive rigid conduit or the lighter and less costly EMT was required for carrying the electrical circuits through the concrete floor slabs, and careful analysis of all of the contract documents leaves the answer in doubt. At the least, a factual question was presented for the jury to determine whether the EMT which Contractor proposed to install in the floors would be "subject to severe physical damage," either "during installation or afterward," and whether it was "made of a material judged suitable for the condition," requirements made by The National Electrical Code for use of

EMT. Thus, if this appeal presented solely the question of which material was required by the contract, the matter would have been one for the jury to determine and directed verdict would have been improper. Such a case would have been presented had Contractor persisted in installing EMT and Owner had thereafter contended this constituted a breach of the contract. Here, however, Contractor did not install EMT but installed the more expensive conduit, and the question presented by this appeal is whether, after viewing the evidence in the light most favorable to Contractor, the Contractor has shown any right to recover from the Owner the increased cost of the more expensive material. We hold that no such showing was made and that directed verdict for Owner was therefore appropriate.

In so holding, we do not base our decision on the "final billing" contained in Contractor's letter to Owner of 4 November 1970 showing a "Total Due" of $8,636.54 and the subsequent payment and acceptance of that amount. This was one of the grounds upon which the trial judge relied in directing verdict for the Owner, but in our opinion the facts of this case distinguish it from the situation presented in *Phillips v. Construction Co.*, 261 N.C. 767, 136 S.E. 2d 48, in that regard. Article 9 of AIA Document A201, General Conditions of the Contract for Construction, which was incorporated into the contract between Contractor and Owner, contains the following:

> "9.7.6 The acceptance of final payment shall constitute a waiver of all claims by the Constractor *except those previously made in writing and still unsettled.*" (Emphasis added.)

Here, the disputed claim for $4,716.84 had been previously made in writing and was still unsettled. In addition, this very action for recovery of the extra cost of installing the more expensive conduit had already been filed and was pending in court when Contract's letter of 4 November 1970 showing a total due of $8,636.54 was sent, Contractor had been expressely directed to omit its claim for the extra cost of the conduit from its billing to Owner, and there was no dispute that Contractor was entitled to receive the $8,636.54 as billed. Under these circumstances we do not believe that any party involved intended or understood that this lawsuit was being settled or that Contractor was waiving the claim which is the basis of this lawsuit by the billing for and the payment and acceptance of the $8,636.54.

[2] In our opinion the order directing verdict dismissing Contractor's claim was required by other provisions of the contract. Article 12 of the General Conditions of the Contract for Construction deals with changes in the work and provides that all such changes shall be authorized by Change Order. Article 12 contains the following:

> "12.1.2 A Change Order is a written order to the Contractor signed by the Owner and the Architect, issued after the execution of the Contract, authorizing a Change in the Work or an adjustment in the Contract Sum or the Contract Time. Alternatively, the Change Order may be signed by the Architect alone, provided he has written authority from the Owner for such procedure. *The Contract Sum and the Contract Time may be changed only by Change Order.*
>
> &ast; &ast; &ast; &ast; &ast;
>
> "12.2 CLAIMS FOR ADDITIONAL COST OR TIME
>
> "12.2.1 If the Contractor wishes to make a claim for an increase in the Contract Sum or an extension in the Contract Time, he shall give the Architect written notice thereof within a reasonable time after the occurrence of the event giving rise to such claim. This notice shall be given by the Contractor before proceeding to execute the work, except in an emergency endangering life or property in which case the Contractor shall proceed in accordance with Sub-paragraph 10.3.1. No such claim shall be valid unless so made. If the Owner and the Contractor cannot agree on the amount of the adjustment in the Contract Sum or the Contract Time, it shall be determined by the Architect. *Any change in the Contract Sum or Contract Time resulting from such claim shall be authorized by Change Order.*" (Emphasis added.)

In the present case, all of the evidence shows that no Change Order was issued changing the Contract Sum to reflect the increased cost to Contractor of installing conduit rather than EMT, and there is no evidence that Owner agreed to any modification of or waiver of its rights under the foregoing contract provisions. The case then comes down to this: If the correct interpretation of the contract specifications is as Owner, Architects and Engineers have consistently contended, and Contractor was required by these specifications to install rigid conduit rather than EMT in the floors, then when Contractor did so,

it did no more than it was originally obligated to do and is entitled to no extra compensation. On the other hand if the correct interpretation is as Contractor contends, and Contractor could comply with those specifications by installing the less expensive EMT, then a Change Order was required before Owner could be bound to pay for the increased cost incurred by Contractor when it installed the more expensive conduit. Although Contractor installed the conduit only at the insistence of Engineers, and there was evidence that Owner relied upon Architects who in turn relied upon Engineers to prepare and interpret the contract specifications relating to the electrical work, there was no evidence that Owner appointed Engineers its agent or in any other manner authorized Engineers to obligate Owner to any increase in the amount Owner was bound to pay Contractor for work performed under the contract. For example, had Engineers insisted that the specifications required Contractor to install conduit made of gold and had Contractor done so even though under protest, we suppose no one would contend that Owner should be bound to pay Contractor for its increased cost absent a Change Order issued in the manner and as authorized in the contract between Owner and Contractor. While the present case is not so extreme, the same principle applies. We conclude that the order directing verdict dismissing Contractor's claim against Owner was properly entered.

In addition to assigning error to entry of that order, Contractor made assignments of error to rulings of the trial judge admitting or excluding evidence. However, it is not necessary for us to discuss these, since had the judge's ruling in each instance been as Contractor contends it should have been, directed verdict for Owner would still have been properly entered. Accordingly, the judgment appealed from is

Affirmed.

Judges BRITT and MORRIS concur.