J. REX DAVIS v. THE DENNIS LILLY COMPANY (FORMERLY BROWER COM-
PANY), HAROLD F. BROWER AND HORACE A. BROWER

No. 119A91

(Filed 6 December 1991)

1. **Master and Servant § 8.1 (NCI3d)— employment contract—
   compensation—summary judgment improper**
   Summary judgment was inappropriately entered for de-
   fendants where plaintiff was hired as operations manager for
   what is now The Dennis Lilly Company; plaintiff and defend-
   ants entered in 1985 an employment and option to purchase
   agreement which specified a fixed salary and an accrued per-
   centage compensation (APC); early in 1987, defendants offered
   plaintiff a salary raise in exchange for his option rights and
   release of the APC in any year in which plaintiff did not
   work for defendants for the entire year; plaintiff refused the
   offer and was terminated; negotiations between defendants
   and The Dennis Lilly Company began several months after
   the termination and resulted in a merger of the corporation
   into the Lilly Company; plaintiff demanded payment of 25%
   of the sale proceeds in excess of $2 million under Section
   5.07 of the agreement, which plaintiff contends entitles him
   to payment if the stock or assets of the corporation are sold
   within one year after termination of his employment; and de-
   fendants refused, claiming that plaintiff had not satisfied a
   precondition in Section 5.01 because he had not remained in
   continuous employment with the corporation through the time
   of the offer. A question of material fact exists as to the mean-
   ing and intent of the parties with respect to Sections 5.01
   and 5.07.

   **Am Jur 2d, Master and Servant §§ 74, 81, 82, 84.**

DAVIS v. DENNIS LILLY CO.

[330 N.C. 314 (1991)]

2. **Master and Servant § 8.1 (NCI3d)— employment contract— compensation—evidence sufficient for jury**

There was sufficient evidence to survive defendants' motions for directed verdict and judgment notwithstanding the verdict on the issue of underpayment of accrued percentage compensation (APC) where defendants contended that their accountant had followed generally accepted accounting principles in calculating the APC, but never challenged the competency of plaintiff's expert to testify as an expert that defendants' accountant had not complied with generally accepted accounting principles.

**Am Jur 2d, Master and Servant §§ 74, 84.**

3. **Master and Servant § 9 (NCI3d)— termination of employment— accrued percentage compensation**

The correct amount was awarded in the trial court for accrued percentage compensation (APC) in an action to determine, in part, plaintiff's compensation following the termination of his employment where defendants contended that the amount due was $8,882.12, rather than the $62,860.35 awarded, because the APC for the last year was required by N.C.G.S. § 95-25.7 and Section 2.02 of the employment agreement to be paid in cash upon termination, and was calculable at the time of termination by using a method different from earlier years. Even though the APC was "due and payable" upon plaintiff's termination, it could not be paid under the terms of the contract until it could be calculated in accordance with generally accepted accounting principles; therefore, under Section 2.02 of the agreement and N.C.G.S. § 95-25.7, the calculation is placed at a later date.

**Am Jur 2d, Master and Servant § 81.**

Chief Justice EXUM dissenting in part and concurring in part.

Justice MEYER dissenting.

Justice MITCHELL joins in this dissenting opinion.

APPEAL of right pursuant to N.C.G.S. § 7A-30(2) and petition for discretionary review pursuant to N.C.G.S. § 7A-31 by the plaintiff of the decision of a divided panel of the Court of Appeals,

DAVIS v. DENNIS LILLY CO.

[330 N.C. 314 (1991)]

101 N.C. App. 574, 400 S.E.2d 779 (1991), which reversed in part, affirmed in part, and remanded the judgment of *Albright, J.*, at the 11 December 1989 Civil Session of Superior Court, GUILFORD County. Heard in the Supreme Court on 15 October 1991.

*Schoch, Schoch and Schoch, by Arch Schoch, Jr., for plaintiff-appellant.*

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr. and Michael D. Holt, for defendant-appellee.*

MARTIN, Justice.

This is a civil action seeking money damages for breach of two provisions of a contract of employment with option to purchase. The trial judge granted summary judgment in favor of all defendants on the issue of whether plaintiff was entitled under the contract to 25% of the proceeds of the sale of Brower Company in excess of $2 million if the company were sold within one year of Davis's separation from the corporation. The trial judge also granted summary judgment in favor of the defendants on the issue of reformation of the contract. The third issue concerning an agreement to pay plaintiff an accrued percentage of the corporation's net income was tried by jury, which found in Davis's favor and awarded him $62,860.36. Both parties appealed. The Court of Appeals affirmed the trial court's entries of summary judgment with Judge Cozort dissenting, and, in effect, vacated the trial court's entry of judgment in favor of plaintiff for $62,860.36 and remanded the cause for entry of judgment for only $8,882.12. We reverse the decision of the Court of Appeals on the summary judgments and remand the case for trial on these issues. We also reverse the Court of Appeals on Davis's entitlement to recover additional accrued percentage compensation beyond the admitted underpayment of $8,882.12 and reinstate the trial court's judgment of $62,860.36.

J. Rex Davis was hired by the Browers as operations manager for Brower Company (now Dennis Lilly Company). Davis and the defendants entered an employment and option to purchase agreement on 1 March 1985. The agreement specified that Davis would receive $30,000 a year fixed salary and accrued percentage compensation ("APC"). The APC was to be calculated by applying a specified sliding percentage formula to the corporation's net income before interest expense and income tax. The APC would accrue instead

of being paid immediately to Davis. Payment of the APC would occur as specified in section 2.02 of the agreement on Davis's termination, death or the sale or transfer of the majority of the issued and outstanding common stock of the corporation.

The agreement in section 2.02 states that:

Corporation agrees to accrue for the benefit of Davis . . . an additional sum . . . equal to a percentage of the Income Before Interest Expense and Income Tax of the Corporation as follows:

| Corporation's Income Before Interest Expense and Income Tax | Davis's Percentage |
|---|---|
| -0-    - $100,000 | 15% |
| $100,001 - $200,000 | 14% |
| $200,001 - $300,000 | 13% |
| $300,001 - $400,000 | 12% |
| $400,001 - $500,000 | 11% |
| Over  $500,000 | 10% |

The Income Before Interest Expense and Income Tax of the Corporation for the purposes of computing Davis's Accrued Percentage Compensation under the provisions of this Agreement, shall be determined by the independent accounting firm regularly employed by the Corporation in accordance with generally accepted accounting principles. Such computation of Income Before Interest Expense and Income Tax and of Davis's Accrued Percentage Compensation, made in the manner herein provided, shall be final and binding upon the Corporation and Davis.

The Accrued Percentage Compensation shall be accrued by the Corporation and shall be due and payable to Davis in cash upon the occurrence of the earliest of the following events:

(a) termination of Davis's employment with the Corporation for whatever reason;

. . . .

(c) a sale or transfer of a majority of the issued and outstanding common stock of the Corporation by Harold F. Brower and Horace A. Brower . . . or a sale by the Corporation of

substantially all of its assets to a buyer group that does not include Davis.

Davis began work on 1 March 1985. From fiscal years 1985 through 1987, Davis worked for the defendants 122 days in 1985, 365 days in 1986, and 228 days in 1987. To determine Davis's APC for fiscal year 1985, the defendants' accountant chose to prorate the number of days he believed Davis worked that year (90 days) over the appropriate income figure for the entire fiscal year before interest expense and income taxes. However, Davis worked 122 days. He was paid $22,086.35 instead of the correct amount of $30,968.47. This is the undisputed underpayment of $8,882.12. In fiscal year 1986, Davis's APC amounted to $87,281.00.

Early in 1987, the defendants offered Davis a salary raise of $2,400 per year in exchange for his option rights and release of the defendants for the APC for any year in which Davis did not work for the defendants the entire year. On 3 February 1987, Davis refused the offer. Davis was terminated 13 February 1987. In a letter dated 27 February 1987, Davis advised the defendants not to take any actions that would prejudice his option rights under Article III of the agreement.

When the defendants' accountant calculated Davis's APC for 1987, he used a different method of calculation than that used in 1985 and 1986. In 1985 and 1986, plaintiff's APC was calculated using the corporation's year end income; however, in 1987, the accountant used the income that had actually been received on the company books as of 31 January 1987 and prorated one-half of February's accrued compensation based on income received in the first seven months of fiscal year 1987. This different method of calculation resulted in an APC of $10,480.44.

Negotiations between the defendants and Dennis Lilly Company began several months after Davis's termination. On 4 September 1987, an agreement was executed between Lilly and the defendants, causing the corporation to be merged into Lilly Company. Davis demanded, pursuant to section 5.07 of the agreement, payment of 25% of the sale proceeds in excess of $2 million. The defendants refused Davis's demand, saying Davis did not satisfy the precondition for asserting such right set out in section 5.07 of the agreement because he had not remained in continuous employment with the corporation through the time of the offer from Lilly Company. Other facts pertinent to this appeal will be discussed below.

**DAVIS v. DENNIS LILLY CO.**

[330 N.C. 314 (1991)]

[1]  The rules governing motions for summary judgment are now familiar learning, and it would serve no useful purpose to repeat them here. *Rorrer v. Cooke*, 313 N.C. 338, 329 S.E.2d 355 (1985). A concise statement of the rules appears in *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 376 S.E.2d 425 (1989). We first address the issue of whether the Court of Appeals erred in affirming the entries of summary judgment for the defendants by the trial court.

Section 5.07 of the agreement provides that:

In the event that the shares of stock of the Corporation or the assets and liabilities of the Corporation are transferred to the bona fide purchaser, then Davis, in consideration of his services to the Corporation, shall be paid a portion of the proceeds from such sale equal to twenty-five percent (25%) of the total proceeds of such sale in excess of $2,000,000. Provided, however, anything to the contrary notwithstanding, Davis shall receive the payment stated in this section only if either (a) he is still in the employment of Brower, or (b) the stock or assets of the Corporation are sold within one year after termination of his employment with Brower. Payment of the portion of the proceeds to Davis as provided in this section shall be made in cash at the closing of the purchase.

Davis contends as a matter of law that the agreement provides that he is entitled to the payment described in section 5.07 as a result of the September 1987 sale of Brower Company. Where the contractual language is plain and unambiguous, a contract is to be construed as a whole with each clause and word being considered with reference to its other provisions. *See generally Yates v. Brown*, 275 N.C. 634, 170 S.E.2d 477 (1969); *Robbins v. C.W. Myers Trading Post, Inc.*, 253 N.C. 474, 117 S.E.2d 438 (1960). While Article V of the contract is captioned "Right of First Refusal," section 6.05 states:

The captions or headings of the paragraphs in this Agreement are inserted and included solely for convenience and shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise.

Therefore, considering each clause in light of all other clauses in the agreement, all sections of Article V are not necessarily related to the right of first refusal. The sale of the corporation

**DAVIS v. DENNIS LILLY CO.**

[330 N.C. 314 (1991)]

to Lilly Corporation was within one year of Davis's termination on 13 February 1987. Section 5.07 provides that, even though Davis separated from the corporation, he is still entitled to receive 25% of the proceeds in excess of $2 million paid by Lilly for the corporation. Davis contends that there is nothing to the contrary within this section or any other section in the contract. He also contends that there are no further. requirements pertaining to the sale to a third party. Davis also argues that the written agreement manifests the intent of the parties that Davis will share in the proceeds of the sale.

The defendants contend, however, that section 5.01 gives two further restrictions to Davis's right of first refusal and right to the sale proceeds. Section 5.01 states that:

> If after March 1, 1987 and provided Davis remains in the continuous employment of Brower the Shareholders shall receive a bona fide offer . . . and the Shareholders or the Corporation are willing to accept such bona fide offer, then such Shareholders or the Corporation shall make the offer to transfer described herein.

The defendants, therefore, contend that Davis would receive payment of sale proceeds only if (1) a third party makes a bona fide offer to purchase after 1 March 1987 as provided in section 5.01 of the agreement; (2) the offer is made during Davis's employment with the Corporation as required in section 5.01 of the agreement; and (3) the offer leads to a sale during Davis's employment with the corporation or within one year after his termination as provided for in section 5.07 of the agreement. The defendants argue that Davis fails to meet the second requirement of continuing employment.

The agreement provides that Davis must be employed when a bona fide offer is made before he can have the right of first refusal.

> 5.01 *Receipt of Bona Fide Offer.* . . . [P]rovided Davis remains in the continuous employment of Brower[,] the Shareholders shall receive a bona fide offer to purchase all of the shares . . . and the Shareholders . . . are willing to accept such bona fide offer, then such Shareholders . . . shall make the offer to transfer described herein.

> 5.02 *Offer By Shareholders or Corporation.* The offer shall be given to Davis . . . to transfer all of the shares [to Davis]

DAVIS v. DENNIS LILLY CO.

[330 N.C. 314 (1991)]

. . . at the same purchase price and upon the same payment terms as the transfer the Shareholders or Corporation proposes to make [to the bona fide purchaser].

Under defendants' contention, if Davis must be employed when the offer is made, then that portion of section 5.07 which states that Davis would share in the sale price, even if it occurs within one year after termination of employment, would be rendered meaningless. Davis cannot be both employed for the purpose of first refusal and unemployed as contemplated in section 5.07, unless the offer is made just prior to his termination. The sale from the offer might not occur within the year after termination. Also, Davis's termination occurred before the 1 March 1987 date. This negates the possibility of Davis exercising his right of first refusal as he was terminated before he could exercise that right.

A question of material fact exists as to the meaning of and the intent of the parties with respect to sections 5.01 and 5.07. Therefore, a genuine issue of material fact exists to be decided by a jury and the entry of summary judgment was inappropriate. *Broadway v. Blythe Industries, Inc.*, 313 N.C. 150, 326 S.E.2d 266 (1985); *Bone International, Inc. v. Brooks*, 304 N.C. 371, 283 S.E.2d 518 (1981); *White v. Bowers*, 101 N.C. App. 646, 400 S.E.2d 760 (1991).

Because we reverse the summary judgment entered for defendants, it is not necessary for this Court to discuss the second issue of the appeal as to the allegations of mutual mistake of the parties and the possible reformation of the agreement. We further note that this issue is not properly before this Court for review, N.C. R. App. P. 16(a), (b), it not being a basis for the dissenting opinion in the Court of Appeals nor before this Court pursuant to N.C.G.S. § 7A-31.

[2] Under his third issue on appeal, Davis contends that he was entitled to recover additional APC beyond the admitted underpayment of $8,882.12. Section 2.02 requires that the APC was to be determined by "generally accepted accounting principles" and was "due and payable to Davis . . . upon . . . termination of Davis's employment . . . or a sale . . . of the Corporation." The term "generally accepted accounting principles" is a term of art in the accounting profession. It is well established that where some of the terms in a contract are words of art which require the evidence of experts to explain them, the jury, of necessity, must pass on their meaning. *Lumber Co. v. Construction Co.*, 249 N.C. 680, 107

**DAVIS v. DENNIS LILLY CO.**

[330 N.C. 314 (1991)]

S.E.2d 538 (1959); *Silverthorn v. Fowle*, 49 N.C. (4 Jones) 362 (1857); *Electric Co. v. Newspaper, Inc.*, 22 N.C. App. 519, 207 S.E.2d 323, *cert. denied*, 285 N.C. 757, 209 S.E.2d 280 (1974). Davis's expert ·in accounting practices, George Breslow, testified to the meaning of the term "generally accepted accounting principles," stating:

> Generally accepted accounting principles, as they are applied, represents, or means that you should follow a method consistently throughout the circumstances that you're required to prepare your computation or prepare financial statements, and what have you, unless there is a substantial error in the way that you may have started out . . . .
>
> . . . .
>
> Consistency for accounting reporting means preparing and preparation of the financial statements and the accounting records that go into the preparation of financial statements that are prepared on a consistent basis for certain key financial circumstances are treated the same each time.

He also testified to its application to the present case and his opinion that the defendants' accountant had not complied with these principles, thereby miscalculating Davis's APC for 1987.

> [T]he year in which he was terminated, I feel that using a monthly basis, not only did the accounting records of the corporation apparently not have sufficient timeliness to prepare computation during the year, but I think it does not—I think it is a definite departure from generally accepted accounting principles in that it is inconsistent to then go to a fraction of so many months to 12 months. . . . [W]hen Mr. Clark chose a method in the beginning which was reasonable, he should have stayed with that method at the end . . . .
>
> Now, in that regard, I think that there was a departure from consistency which would in a sense· be a contradiction of generally accepted accounting principles.

Defendants' motion for directed verdict and judgment notwithstanding the verdict was denied by the trial court. Defendant contends that this was error. The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. *Kelly v. International Harvester Co.*, 278

DAVIS v. DENNIS LILLY CO.

[330 N.C. 314 (1991)]

N.C. 153, 179 S.E.2d 396 (1971). When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, *Smith v. Voncannon*, 283 N.C. 656, 197 S.E.2d 524 (1973), or to present a question for the jury. *In re Housing Authority*, 235 N.C. 463, 70 S.E.2d 500 (1952). Where the motion for judgment notwithstanding the verdict is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions. *Snider v. Dickens*, 293 N.C. 356, 237 S.E.2d 832 (1977); N.C.G.S. § 1A-1, Rule 50(a), (b) (1990).

While the defendants contend that their accountant had followed generally accepted accounting principles, the defendants never challenged Davis's expert's competency to testify as an expert. They failed to impeach his credibility. The defendants' argument goes to the weight of the evidence presented, failing to withdraw the issue from the jury. It is for the jury to weigh all the evidence and make its decision concerning the meaning of the term "generally accepted accounting principles." That is precisely what the jury did at trial when it awarded Davis in excess of $62,000 in APC. We hold that there was sufficient evidence to survive defendants' motions for directed verdict and judgment notwithstanding the verdict.

[3] The defendants concede that Davis is owed $8,882.12 in APC payments, but only for the underpayment for fiscal year 1985. They argue that Davis should receive nothing more for fiscal year 1987's APC because the contract states in section 2.02 that the APC is due and payable in cash "upon" Davis's termination. This interpretation, the defendants argue, is required by N.C.G.S. § 95-25.7 which states:

Employees whose employment is discontinued for any reason shall be paid all wages due on or before the next regular payday. Wages based on bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount becomes calculable when a separation occurs . . . .

Defendants contend that the calculation for the APC for fiscal year 1987 was calculable at the time of Davis's termination, but only by using a method different than that used for the years 1985 and 1986. Using a different method of calculation, the corpora-

DAVIS v. DENNIS LILLY CO.

[330 N.C. 314 (1991)]

tion was able to pay Davis as the defendants alleged is required in N.C.G.S. § 95-25.7.

Defendants' reliance on N.C.G.S. § 95-25.7 is misplaced. This statute inures to the benefit of the plaintiff. The statute sets a time when wages are to be paid after employment is discontinued. Wages based on bonuses, commissions or other forms of calculation, such as APCs, shall be paid on the payday after they are first calculable. The APC could not be calculable using generally accepted accounting principles until the close of fiscal year 1987 because generally accepted accounting principles require such calculations be done consistently from year to year. Defendants' attempt to calculate the APC before the end of fiscal year 1987 could not arrive at a correct APC within the meaning of "generally accepted accounting principles."

At trial, the defendants' accountant testified that when faced for the first time with adopting a method for computing the relevant income base for determining Davis's APC for the partial year 1985, he conferred with defendant Harold Brower and the corporation's attorney who had drafted the agreement. The accountant proposed the method of calculation which was approved and authorized by both Brower and the attorney. If a party under a contract has a choice thereunder of alternative obligations and elects one, his subsequent obligation remains under that alternative. A breach may occur if such method is not subsequently followed to the same extent as if the contract had originally provided for the performance to be completed by that alternative alone. *Arnold v. Arnold*, 17 N.C. (2 Dev. Eq.) 467 (1833); 17A C.J.S. *Contracts* § 455 (1963). Although the agreement did not specify any method by which to calculate the APC, the defendants, by approving and authorizing their accountant to use a specific method of calculation for the 1985 partial year APC, elected that method of calculation. The defendants were thereby obligated in 1986 and 1987 to follow the same method in which to determine Davis's APC.

Section 2.02 made the initial computation chosen for Davis's APC by the defendant's accountant binding for the calculation of APCs for subsequent partial years of service to the corporation. Davis's expert testified that generally accepted accounting principles required the calculation to be consistent.

The contract states that the APC is due and payable on Davis's termination. Even though the APC was "due and payable" upon

Davis's termination, it could not be paid under the terms of the contract until it could be calculated in accordance with generally accepted accounting principles. Therefore, under section 2.02 of the agreement and N.C.G.S. § 95-25.7, the calculation is placed at a later date so that the intent of the parties can be carried out and the calculation can be made in a consistent method in accord with generally accepted accounting principles.

The decision of the Court of Appeals affirming summary judgment is reversed. The decision of the Court of Appeals vacating the jury verdict for plaintiff is reversed. This cause is remanded to the Court of Appeals for further remand to the Superior Court, Guilford County for reinstatement of the jury award of $62,860.36 for plaintiff, and for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Chief Justice EXUM dissenting in part and concurring in part.

For the reasons stated in part I of Justice Meyer's dissenting opinion, I likewise dissent from that part of the majority opinion which reverses the Court of Appeals' decision affirming the trial court's entry of summary judgment for defendants on plaintiff's claim that he was entitled to share in the proceeds of the sale of the corporation.

I concur in that part of the majority opinion which reinstates the jury verdict for plaintiff.

Justice MEYER dissenting.

I disagree with the majority's conclusion that the agreement at issue in this case presents a genuine issue of material fact concerning plaintiff's rights upon transfer of the corporation. Moreover, I do not agree that there is sufficient evidence to support the jury's finding that plaintiff is entitled to any additional accrued percentage compensation beyond the amount the parties stipulated as due. Therefore, I dissent from the majority opinion and vote to affirm the decision of the Court of Appeals.

I.

A review of the agreement, in its entirety, reveals that the agreement was carefully drafted to define several agreements be-

tween the parties. Following an explanation of plaintiff's duties and term. of employment set forth in Article I, the agreement contains provisions detailing plaintiff's right to compensation (Article II), granting plaintiff an option to purchase the corporation (Article III), restricting the sale of the corporation's stock (Article IV), granting plaintiff a right of first refusal (Article V), and outlining miscellaneous agreements concerning such items as modification and enforcement of the agreement (Article VI).

Article V, the portion disputed in this case, is similarly organized to define the parties' agreement clearly. This article, entitled "Right of First Refusal," begins with section 5.01, which provides:

> 5.01 *Receipt of Bona Fide Offer.* If after March 1, 1987 and provided Davis remains in the continuous employment of Brower the Shareholders shall receive a bona fide offer to purchase all of the shares of stock of the Corporation or the Corporation shall receive a bona fide offer to purchase all of the assets and assume all of the liabilities of the Corporation, and the Shareholders or the Corporation are willing to accept such bona fide offer, then such Shareholders or the Corporation shall make the offer to transfer described herein.

Under this section, two prerequisites must be met before the corporation is obligated to offer to sell the corporation to plaintiff. First, the shareholders of the corporation must receive a bona fide purchase offer, acceptable to the corporation or its shareholders. Second, plaintiff must have been employed at the time the offer was received by the corporation's shareholders. Only if these requirements are met is the corporation required to offer to transfer the corporation's stock or assets and liabilities to plaintiff.

The remaining provisions of Article V similarly deal with plaintiff's right of first refusal. Section 5.02 explains the manner and method in which the corporation is to make the offer to plaintiff, and sections 5.03 through 5.05 describe what will occur if plaintiff accepts the corporation's offer. The procedure to be taken upon plaintiff's rejection of the offer is outlined in sections 5.06 and 5.07. These sections provide:

> 5.06 *Transfer After Offer.* If the stock or assets of the Corporation are not purchased by Davis as provided in this Article, then the shareholders or the Corporation shall, for a period of six (6) months thereafter, be free to transfer the

DAVIS v. DENNIS LILLY CO.

[330 N.C. 314 (1991)]

shares or assets to the prospective purchaser, upon the terms disclosed in the offer given to Davis pursuant to section 5.02 of this Agreement.

5.07 *Payment to Davis*. In the event that the shares of stock of the Çorporation or the assets and liabilities of the Corporation are transferred to the bona fide purchaser, then Davis, in consideration of his services to the Corporation, shall be paid a portion of the proceeds from such sale equal to twenty-five percent (25%) of the total proceeds of such sale in excess of $2,000,000. Provided, however, anything to the contrary notwithstanding, Davis shall receive the payment stated in this section only if either (a) he is still in the employment of Brower, or (b) the stock or assets of the Corporation are sold within one year after termination of his employment with Brower. Payment of the portion of the proceeds to Davis as provided in this section shall be made in cash at the closing of the purchase.

Nothing in Article V in any way suggests that plaintiff is entitled to any rights independent of the right of first refusal.

By focusing on the second sentence contained within section 5.07, the majority concludes that the agreement may be interpreted to entitle plaintiff to share in the proceeds of a sale of the corporation as long as the sale is consummated during plaintiff's employment with the corporation or within a year following the termination of plaintiff's employment with the corporation. This conclusion disregards the cardinal principle that a contract must be construed as a whole and not by placing undue emphasis on isolated provisions. *See Lattimore v. Fisher's Food Shoppe, Inc.*, 313 N.C. 467, 329 S.E.2d 346 (1985); *Dixie Container Corp. v. Dale*, 273 N.C. 624, 160 S.E.2d 708 (1968).

The language of the agreement plainly and unambiguously provides that plaintiff is entitled to share in the proceeds of a sale of the corporation only if (1) the corporation receives a bona fide purchase offer acceptable to the corporation or its shareholders while plaintiff is employed by the corporation; (2) the corporation makes a written offer to transfer to plaintiff the corporation's stock or assets and liabilities on the same terms as set forth in the bona fide offer; (3) plaintiff rejects the corporation's offer; and (4) the corporation consummates a sale pursuant to the bona fide pur-

**DAVIS v. DENNIS LILLY CO.**

[330 N.C. 314 (1991)]

chase offer while plaintiff is still employed with the corporation or within a year after termination of plaintiff's employment.

Moreover, the plain and unambiguous language of section 5.07 provides that plaintiff is entitled to share in the proceeds of a sale of the corporation "[i]n the event that the shares of stock of the Corporation or the assets and liabilities of the Corporation are transferred to the bona fide purchaser." This section necessarily contemplates that the corporation made an offer to plaintiff, pursuant to the right of first refusal, and that plaintiff rejected the offer, thereby permitting the corporation to make a transfer to the bona fide purchaser. It is only by focusing on the second sentence, in isolation from the remainder of the agreement, that the majority is able to reach a different conclusion.

The majority apparently accepts plaintiff's argument that the clause "[p]rovided, however, anything to the contrary notwithstanding" indicates that the language following the clause is a departure from or contrary to that expressed previously and thus may be interpreted as vesting in plaintiff a right, independent of the right of first refusal, to share in the proceeds of a sale of the corporation. This interpretation completely ignores the plain meaning of the beginning of the clause, "[p]rovided, however." As noted by several authorities, "provided" is a word used to indicate that the language following is a limitation on that previously stated. *See Black's Law Dictionary* at 1224 (6th ed. 1990) (stating that "provided" is a "word used in introducing a proviso" — a condition, stipulation, or limitation); *Webster's Third New International Dictionary* at 1827 (1966) (defining "provided" as "on condition that," "with the understanding," or "if only"). It is clear that the entire phrase, read alone and within the context of the remainder of section 5.07, indicates that the language following this clause is departing from the remainder of section 5.07 by further limiting plaintiff's right to share in the proceeds of a sale of the corporation.

The majority, however, rejects the plain and unambiguous language of section 5.07 that entitles plaintiff to share in the proceeds of a sale of the corporation only if (1) plaintiff is employed at the time the corporation receives the bona fide offer, and (2) the sale of the corporation's stock or assets and liabilities is consummated during plaintiff's employment or within a year following the termination of plaintiff's employment. The majority states, "[plaintiff] cannot be both employed for the purpose of first refusal and

**DAVIS v. DENNIS LILLY CO.**

[330 N.C. 314 (1991)]

unemployed as contemplated in section 5.07, unless the offer is made just prior to his termination." I submit that the plain and unambiguous language of section 5.07 expressly requires that plaintiff be employed by the corporation at the time the bona fide offer is received. By discarding the plain and unambiguous language of this section merely because the majority finds it unrealistic that the parties would include such a condition, the majority dismisses our cardinal principles of contract construction and thus grievously errs. Moreover, this provision is not beyond contemplation as suggested by the majority. It is quite logical that section 5.07 was drafted for the purpose of protecting plaintiff's employment. Had the agreement instead provided that plaintiff would be entitled to share in the proceeds of a sale of the corporation only if plaintiff were employed both at the time the bona fide offer was received and at the time the sale was consummated, then the corporation would have been able to prevent plaintiff from sharing in the proceeds by merely terminating plaintiff's employment. As written, however, the agreement removes this incentive to terminate plaintiff's employment upon receipt of a bona fide offer acceptable to the corporation or its shareholders.

I conclude that plaintiff is not entitled to any share of the proceeds of the sale of the corporation. In its unpublished decision below, *Davis v. Dennis Lilly Co.*, 101 N.C. App. 574, 400 S.E.2d 779 (1991), the Court of Appeals correctly noted that plaintiff "would be entitled to 25% of the sale proceeds in excess of $2 million if, (1) after 1 March 1987 while he was in the continued employment of the Brower Company a bona fide offer to purchase was received"; and (2) a sale occurred either while plaintiff was still employed with the Brower Company or within one year of the termination of plaintiff's employment with the Brower Company. "[B]ecause the bona fide offer of the Dennis Lilly Company to purchase the Brower Company was not received while [plaintiff] was employed with the Brower Company, but was received some 'two or three months after [plaintiff] left [their employment],'" plaintiff is not entitled to recover a portion of the sale proceeds.

II.

The majority also errs by concluding that sufficient evidence was presented to support the jury's award to plaintiff of $62,860.36 in accrued percentage compensation. The evidence presented at trial, viewed in the light most favorable to plaintiff, establishes

that plaintiff is not entitled to additional accrued percentage compensation for fiscal year 1987.

As noted by the majority, the agreement at issue in this case plainly and unambiguously provides that accrued percentage compensation ("APC") is to be calculated according to "generally accepted accounting principles" and becomes "due and payable to [plaintiff] . . . upon . . . termination of [plaintiff's] employment . . . or a sale . . . of the Corporation." Since APC became "due and payable" upon the date plaintiff's employment was terminated, the APC could properly be calculated only by using the income figures available at the time plaintiff's employment was terminated.

At trial, plaintiff's expert opined that the method used to calculate plaintiff's 1987 APC was different from the method used to calculate plaintiff's 1985 APC and that this "departure from consistency . . . would in a sense be a contradiction of generally accepted accounting principles." Relying on this testimony, the majority concludes that there was sufficient evidence to support a finding that plaintiff's APC was not properly calculated in accordance with generally accepted accounting principles.

Although I agree with the majority that the agreement required plaintiff's APC to be calculated in accordance with generally accepted accounting principles, I do not agree that sufficient evidence was presented to show that the 1987 APC calculations were in violation of generally accepted accounting principles. Upon cross-examination, plaintiff's accounting expert conceded that the express provisions of the agreement required that the corporation pay plaintiff the APC upon termination. When asked whether generally accepted accounting principles permit an accountant to disregard the express terms of a written contract, plaintiff's expert replied:

A. Oh, no.

. . . .

Q. What you are saying is that as an accountant you are not entitled to deviate from the written terms of the contract?

A. That is correct.

Upon further questioning concerning the APC due plaintiff for fiscal year 1987, plaintiff's expert indicated that there was no way, absent a mutual agreement not present in this case, that the corporation could have waited until the fiscal year-end to pay plaintiff

the APC due for 1987. According to the express, unambiguous provisions of the agreement, the corporation was obligated to pay plaintiff his accrued percentage compensation on the date that plaintiff's employment was terminated. Had the corporation's accountant waited until year-end to calculate and pay plaintiff the accrued percentage compensation, he would have put the corporation in breach of its agreement and, according to plaintiff's expert, would have violated generally accepted accounting principles.

Based upon the plain and unambiguous language of the agreement, I conclude that plaintiff is not entitled to share in the proceeds of the sale of the corporation. I also conclude that there was insufficient evidence to support the jury's finding that plaintiff is entitled to additional APC for fiscal year 1987. For these reasons, I dissent from the majority opinion and vote to affirm the Court of Appeals.

Justice MITCHELL joins in this dissenting opinion.